IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| H.C. BROWN, JR., #578263, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:24-cv-01228 |
| | ) | |
| JASON CLENDENION, et al., | ) | JUDGE RICHARDSON |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pro se plaintiff H.C. Brown, Jr., a state inmate in custody at the Riverbend Maximum Security Institution (RMSI), filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. PAUPER STATUS**

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Plaintiff's IFP application includes the financial affidavit (Doc. No. 2 at 1–2) and certification of his inmate trust account history (*id.* at 3) required by statute. These filings indicate that Plaintiff had no funds on account during the six previous months and that he could not afford to pay the filing fee when he filed the Complaint. Plaintiff's IFP application (Doc. No. 2) is therefore **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

## B. Factual Allegations

Plaintiff alleges that on April 20, 2024, while he was confined in administrative segregation because of a confrontation with a member of the Bloods prison gang, another member of the Bloods, inmate Nail, threatened Plaintiff after he (Plaintiff) objected to being removed from an industrial cleaning assignment. (Doc. No. 1-1 at 5.) Plaintiff's name was "removed … from the board as industrial cleaner" and replaced by another gang member, inmate Potter. Potter came to Plaintiff's cell and threatened Plaintiff that he (Plaintiff) would be assaulted upon release from segregation to the general population. (*Id.* at 5–6.) Counselor Kendra Knight then came to Plaintiff's cell and told him that he would be recommended for release to the general population. (*Id.* at 6.) Plaintiff alleges that Knight's actions were in retaliation for prior grievances wherein Plaintiff charged Knight with failing to follow policy regarding administrative segregation placement, review, and release. (*Id.*) The conflict between Plaintiff and his fellow inmates began when a guard identified Plaintiff to inmate Nail as "not from Tennessee but from Texas," so "until the Plaintiff get on something from Tennessee the Plaintiff have no say." (*Id.* at 7.)

Plaintiff continued to have conflicts with gang-affiliated inmates. Inmate Nail came to Plaintiff's cell door and threatened him, and Officer Jonathan Torres also came to Plaintiff's cell and told Nail that Unit Manager Burnette had stated that Plaintiff was trying to get assigned to protective custody. (*Id.* at 8.) Sgt. Lakeia Wells also came to Plaintiff's door "hollering" that he (Plaintiff) was trying to get assigned to protective custody. (*Id.*) When Plaintiff told Counselor Knight about the threats he (Plaintiff) was facing, Knight stated that she spoke with Chief Counselor Bates, who responded that Plaintiff could not be placed in protective custody because he (Plaintiff) was already "on max segregation." (*Id.* at 9.) Plaintiff alleges that his inquiries and

requests for records have not been processed "because the Plaintiff is a litigator from the state of Texas" and "refuse[s] to be force[d] into an affiliation." (*Id.*)

Plaintiff alleges that guards have asked him to sell drugs and have offered him drugs "to stop litigating against the administration." (*Id.* at 10.) He alleges that his grievances are not processed properly. (*Id.* at 10–13.) He alleges that Officer Tyran Torres is aggressive and intimidating whenever he escorts Plaintiff to and from the shower or recreation. (*Id.* at 14.) He alleges that the defendants this action "are all a part of a fraternity[,] the Penitentiary Secret Homosexual Masons," whose "motto is manipulation and control." (*Id.*) Inmate Nail gave another inmate a fatal dose of fentanyl and cocaine, and the death was "covered up by the administration." (*Id.*) Yet another inmate died from the drugs provided by Nail, and the administration again covered up the death. (*Id.*) "Because of the fact that the Plaintiff is a litigator and is very much aware" of what happens between officers and inmates at RMSI, they continuously ask for his loyalty and for him "to be a part of this fraternity." (*Id.* at 14–15.)

After an incident where another inmate spat on Plaintiff but Plaintiff was also accused of spitting, Plaintiff was relocated to a different building and cell within B pod. The new building was used for disciplinary segregation, and the new cell was one "reserve[d] for inmates who[] throw urin[e] and feces" or who spit. (*Id.* at 19.) Plaintiff was told that he was being moved "for exposing his penis on the yard." (*Id.* at 18.) After being escorted to his new cell by Cpl. Maj and Officer Smith, Sgt. Castillo and Cpl. Maj threatened Plaintiff with tasers even though he was in full restraints. (*Id.* at 19.) Plaintiff's new cell has "feces all over the walls [and] the tray slot w[h]ere meals are serve[d]," and the lights stay on all day and night but the plug will not work. (*Id.* at 20.) Plaintiff is denied cleaning supplies to disinfect his cell. (*Id.*) He is being held there despite not receiving a disciplinary report or a hearing before being moved to this cell. (*Id.* at 20–21.) The

defendants named in the Complaint are all aware of Plaintiff contacting the FBI Director by mail and requesting an investigation into the prison administration. (*Id.* at 21.) Because he is housed in disciplinary segregation, all of Plaintiff's bowls and cups were confiscated. (*Id.*) He claims that there is a conspiracy in place to deprive him of his civil rights, and that he was told by staff members and other inmates who had witnessed it that Unit Manager Burnette, Sgt. Domingo Castillo, and Officer Jonathan Torres conferred about how "to force the Plaintiff of[f] this civil rights action and in fact did tell [four inmates] to say the Plaintiff expose[d] his penis and everyone had to go along with it to justify the move" to disciplinary confinement. (*Id.* at 22–23.) On the order of Warden of Treatment Michael Keys, who had previously approved Plaintiff's re-entry into general population and would have had to approve his move to disciplinary confinement, Plaintiff remains in disciplinary confinement despite not having "any disciplinaries in 18 months." (*Id.* at 22–23.)

## C. Analysis

For purposes of initial review, the Complaint plausibly claims a deprivation of procedural due process insofar as it alleges that Plaintiff was confined to harsh conditions in disciplinary segregation without first being charged with and convicted of a disciplinary infraction. Prison inmates do not have a constitutional right to placement in any particular security classification or housing assignment. *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). But inmates may have certain procedural protections when their housing assignment changes, if the change imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property

interest protected by the Due Process Clause . . ., (2) that they were deprived of this protected interest . . ., and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

Here, the Complaint asserts that Plaintiff, despite not receiving a disciplinary report or being taken before "an impartial hearing body and found guilty based on a preponderance of credible evidence and a[ss]essed a punishment," "is being held in punishment status to date which creates a liberty interest." (Doc. No. 1 at 20–21.) In *Franklin v. Aycock*, the Sixth Circuit held that Tennessee inmates have a liberty interest in "not being placed in disciplinary segregation" without minimum procedural safeguards being observed:

> We have no difficulty in finding that Franklin had a state-created liberty interest in remaining free from disciplinary segregation. The Tennessee Department of Corrections has promulgated Uniform Disciplinary Procedures governing disposition of disciplinary charges against state inmates which limit the discretion of prison officials in determining when inmates may be placed in disciplinary segregation. The language used in the procedures is mandatory, requiring that the procedures be employed and requiring a substantive predicate, proof of guilt by a preponderance of evidence of the charged disciplinary violation, before disciplinary segregation may be imposed. The state therefore has created a protected liberty interest in inmates in remaining free from disciplinary segregation absent specified, substantive predicates. Accordingly, Franklin had a protected liberty interest within the meaning of the Due Process Clause of the Fourteenth Amendment.

*Franklin v. Aycock*, 795 F.2d 1253, 1260–61 (6th Cir. 1986). Plaintiff's claim that his right to procedural due process was violated when he was moved to a filthy cell in disciplinary segregation without a disciplinary hearing or conviction of a disciplinary offense, because of a conspiracy between Defendants Burnette, Torres, Maj, Smith, Castillo, and Keys (*see* Doc. No. 1-1 at 17–23), will proceed for further development.

The Complaint otherwise fails plausibly to claim any right to relief for a violation of Plaintiff's constitutional rights. The Courts presumes the truth of the Complaint's allegations of verbal threats, aggressive handling, attempts to intimidate, and other actions of Defendants that

placed Plaintiff in fear of bodily injury, as well as the alleged failure of multiple Defendants to comply with institutional grievance policies, their alleged "cover up" of inmate overdose deaths, and their attempts to recruit Plaintiff into an alleged fraternity or bribe him with drugs to drop his legal pursuits. But those allegations fail to describe conduct capable of violating Plaintiff's constitutional rights. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Verbal abuse and harassment certainly do not. *Id.* at 955. Nor does a prisoner have standing to challenge actions that merely produce a generalized fear of possible injury. *Yoder v. Bowen*, 146 F.4th 516, 522 (6th Cir. 2025) (stating that, to have standing to sue, "Plaintiffs must have suffered an actual past injury, or will suffer imminent future injury, that is concrete and particularized") (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). Prisoners have no right to a particular—or indeed any—prison job, *Ivey*, 832 F.2d at 955, nor to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing, *e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).

Moreover, neither the failure of prison administration to follow Tennessee Department of Correction policies with respect to proceedings on inmate grievances, or proceedings under Title VI of the Civil Rights Act of 1964 (*see* Doc. No. 1-1 at 29), nor the bare allegation that documents presented in the course of such proceedings were somehow falsified or altered, is a matter of constitutional significance,. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (affirming determination that "whether or not defendants' conduct in limiting Walker's access to the grievance procedure was arbitrary or based on fraudulent documents, there was no constitutionally protected due process interest in unfettered access to a prison grievance procedure," so relief was not available under § 1983); *McGowan v. CoreCivic*, No. 16-1253-JDT-

CGC, 2017 WL 4249380, at \*6 (W.D. Tenn. Sept. 25, 2017) ("failing to correctly follow various TDOC prison policies and regulations . . . does not rise to the level of a constitutional violation"); *see also Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 322 (6th Cir. 2023) ("Alone, the failure to follow an internal [jail] policy does not give rise to a deliberate indifference claim.").

Finally, Plaintiff's citation of various criminal law provisions (Doc. No. 1-1 at 30–39) is unavailing. Private citizens lack any "judicially cognizable interest" in the criminal investigation or prosecution of someone else. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Moreover, this Court cannot compel law enforcement to open an investigation. *See*, *e.g.*, *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 490 (6th Cir. 2001) (decision to initiate a criminal investigation rests with Federal Bureau of Investigations, and writs of mandamus are not available to compel an investigation)); *Bullock v. Sheela*, No. 1:14-CV-00092-DAD-EPG-PC, 2017 WL 4707998, at \*4 (E.D. Cal. Oct. 20, 2017), *report and recommendation adopted*, 2018 WL 646132 (E.D. Cal. Jan. 31, 2018) ("Federal courts cannot instigate criminal investigations and prosecutions, and cannot compel a [federal, state, or local] prosecutorial authority to do so.") (citing cases).

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed against Defendants Burnette, Jonathan Torres, Maj, Smith, Castillo, and Keys.[1] All other Defendants are **DISMISSED** from this action.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each of Defendants Burnette, Jonathan Torres, Maj, Smith, Castillo, and Keys. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within

---

[1] The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude any Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

**30 DAYS** of this Order's entry on the docket. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE